**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN ANDERSON, derivatively on behalf of HUB GROUP, INC., | ) Case No. |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| PHILLIP D. YEAGER, DAVID P. YEAGER, PETER B. MCNITT, MARY H. BOOSALIS, LISA DYKSTRA, MICHAEL E. FLANNERY, JAMES C. KENNY, JENELL R. ROSS, MARTIN P. SLARK, GARY YABLON, KEVIN BETH, GEOFFREY DEMARTINO, DENNIS MATHEWS, and BRENT RHODES, | ) ) ) ) ) ) ) ) ) |
| , | ) ) |
| Defendants, | ) ) |
| -and- | ) ) |
| HUB GROUP, INC., a Delaware Corporation, | ) ) |
| Nominal Defendant. | ) |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff John Anderson ("Plaintiff"), derivatively on behalf of Hub Group, Inc. ("Hub Group" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties, gross mismanagement, waste of corporate assets, unjust enrichment, and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *Lawler v. Hub Group, Inc. et al.*,

1

Case No. 1:26-cv-07596 (N.D. Ill.) (the "Securities Class Action"); (iii) corporate governance documents available on the Company's website; (iv) media reports; and (v) other publicly available information.

## NATURE OF THE ACTION

1. This is a stockholder derivative action brought by Plaintiff, a stockholder of Hub Group, on behalf of the Company against the Defendants. This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least April 28, 2023, to May 11, 2026 (the "Relevant Time Period"). During that time the Defendants (as defined herein) caused or allowed Hub Group to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2. Hub Group operates as a transportation logistics provider, offering trucking and related logistics services throughout North America. The Company maintains a significant freight and distribution network, including more than 50,000 shipping containers and approximately 7 million square feet of warehousing and cross-dock facilities. Hub Group reports its operations through two principal business segments: (i) Intermodal and Transportation Solutions, which encompasses its trucking-related operations; and (ii) Logistics, which offers customers additional supply-chain services.

3. This action arises from alleged material misstatements and omissions in Hub Group's SEC filings and other public statements during the Relevant Time Period. The alleged misstatements concerned, among other things, the Company's premature and improper recognition of revenue on certain transactions, the understatement of purchased transportation costs and accounts payable, the adequacy and effectiveness of internal controls, and the purported drivers of Hub Group's financial performance and growth.

2

4. On February 5, 2026, Hub Group disclosed that investors should no longer rely on the Company's financial statements for the first three quarters of 2025 because of "an error that resulted in the understatement of purchased transportation costs and accounts payable in the first nine months of 2025." Hub Group further acknowledged that its reports for those quarterly periods "were in each case materially misstated due to the aforementioned error and should no longer be relied upon," and stated that "the Company [wa]s also continuing to assess the effectiveness of its disclosure controls and procedures and internal control over financial reporting and appropriate remediation steps." The Company estimated that "[t]he total amount of the reduction to accounts payable and purchased transportation costs related to this issue that was recorded during these periods is $77 million." Accordingly, Hub Group announced that it "plans to restate its financial statements for the first, second and third quarters of 2025."

5. Following this disclosure, Hub Group's stock price fell approximately 18%, dropping from $51.33 per share at the close of trading on February 5, 2026, to $41.96 per share at the close of trading on February 6, 2026.

6. Thereafter, on May 12, 2026, Hub Group disclosed that it had "identified certain transactions that were prematurely or incorrectly recognized or not adequately supported," which rendered the Company's 2023 and 2024 annual reports filed with the SEC "materially misstated," and meant that those reports "should no longer be relied upon." Although Hub Group did not disclose the anticipated size of the misstatement, it stated that it "expect[ed] to conclude that it did not maintain effective disclosure controls and procedures and internal control over financial reporting for each of the years ended December 31, 2024 and 2023."

7. In response to this news, Hub Group's stock price declined another 13%, falling from $41.86 per share at the close of trading on May 11, 2026, to $36.62 per share at the close of trading on May 12, 2026.

8. Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements, as well as the inadequate internal controls that allowed the misconduct to occur, in breach of their fiduciary duties to the Company.

## PARTIES

### A. Plaintiff

9. Plaintiff John Anderson is a current shareholder of Hub Group and has continuously held Hub Group stock during all times relevant hereto, and is committed to retaining Hub Group shares through the pendency of this action to preserve his/her standing. Plaintiff will adequately and fairly represent the interests of Hub Group and its shareholders in enforcing its rights.

### B. Nominal Defendant

10. Nominal Defendant Hub Group is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 2001 Hub Group Way, Oak Brook, Illinois 60523. Hub Group common stock trades on the NASDAQ stock exchange under the ticker symbol "HUBG."

### C. Individual Defendants

11. Defendant Phillip D. Yeager has served as President, CEO and a director of the Company since 2023. He has served as Vice Chairman of the Board since February 2024. Defendant P. Yeager is a named defendant in the Securities Class Action.

4

12. Defendant David P. Yeager has been a director of the Company since and Chairman of the Board since 2008. He had served as the Company's CEO from 1996 to 2023. He has also been the Executive Chairman since 2023. Defendant D. Yeager is a named defendant in the Securities Class Action.

13. Defendant Peter B. McNitt has been a director of the Company since 2017. He has been the Lead Director since 2019. McNitt is also the Chair of the Audit Committee.

14. Defendant Mary H. Boosalis has been a director of the Company since 2018.

15. Defendant Lisa Dykstra has been a director of the Company since 2022.

16. Defendant Michael E. Flannery has been a director of the Company since 2022.

17. Defendant James C. Kenny has been a director of the Company since 2016.

18. Defendant Jenell R. Ross has been a director of the Company since 2020.

19. Defendant Martin P. Slark has been a director of the Company since 1996.

20. Defendant Gary Yablon has been a director of the Company since 2022.

21. The foregoing Defendants are herein referred to as "Director Defendants."

22. Defendant Kevin W. Beth served as EVP, CFO, and Treasurer of the Company from January 2024 to May 2026. Defendant Beth is a named defendant in the Securities Class Action.

23. Defendant Geoffrey F. DeMartino served as EVP, CFO, and Treasurer of the Company from 2020, until succeeded by Kevin W. Beth effective January 1, 2024. Defendant DeMartino is a named defendant in the Securities Class Action.

24. Defendant Dennis Mathews has served as Chief Accounting Officer of the Company since June 2025. Defendant Mathews is a named defendant in the Securities Class Action.

25. Defendant Brent Rhodes served as the Chief Accounting Officer from April 2024 to June 27, 2025, when he resigned. Defendant Rhodes is a named defendant in the Securities Class Action.

26. Defendants P. Yeager, D. Yeager, Beth, DeMartino, Mathews, and Rhodes are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

28. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

29. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

30. Venue is proper in this court under 28 U.S.C. § 1391, because Hub Group is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Company Background

31. Hub Group operates as a transportation and logistics freight carrier, providing trucking and related services to participants throughout the supply chain. The Company serves

customers across multiple industries, including retail, consumer products, automotive, and durable goods, and represents that it is among the largest freight transportation providers in North America. Hub Group conducts its business through two main segments: (i) Intermodal and Transportation Solutions, which includes its trucking operations; and (ii) Logistics, which offers customers additional supply-chain services. While Hub Group owns many of the assets used to serve its customers, such as trucks and cargo containers, it also relies on third-party arrangements to obtain access to assets it does not own, including warehouse space.

32. The Company's most significant expense category, by a substantial margin, is purchased transportation and warehousing costs. From 2022 through 2024, those costs accounted for approximately 74% to 76% of revenue each year and exceeded, by more than three times, all of the Company's other reported operating expense line items combined.

**B. Hub Group's False and Misleading Statements**

33. On April 27, 2023, the Company held a conference call with investors and analysts to discuss the financial results for its first quarter of 2023. On that call, Defendant DeMartino stated that "[d]espite softer freight market conditions, we generated revenue of $1.2 billion for the quarter, which is the second highest first quarter revenue in the history of our company." Defendant Phillip Yeager likewise stated that "[w]e will maintain our focus on providing outstanding service and improving our cost structure to drive long-term growth."

34. On May 5, 2023, the Company filed with the SEC its Form 10-Q for the first quarter of 2023. The Form 10-Q included the following statement about the Company's internal controls:

> As of March 31, 2023, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2023.

35.     Submitted along with the Form 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Company's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud ("SOX Certifications"). The SOX certifications signed by Defendants Phillip Yeager and DeMartino each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They further certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

36.     On July 27, 2023, the Company held a conference call with investors and analysts to discuss the financial results for its second quarter of 2023. During that call, Defendant DeMartino stated that "[d]espite softer freight market conditions, we generated revenue of over $1 billion for the quarter and operating income margin of 6%." Defendant Phillip Yeager also represented that the Company "maintain a strong view that we are in a fantastic position to drive growth through our best-in-class service and team, excellent customer relationships, and focused investment approach."

37.     On August 4, 2023, the Company filed with the SEC its Form 10-Q for the second quarter of 2023. The Form 10-Q included the following statement about the Company's internal controls:

As of June 30, 2023, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2023.

38.     Defendants Phillip Yeager and DeMartino again provided SOX certifications stating that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They also certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

39.     On October 26, 2023, the Company held a conference call with investors and analysts to discuss the financial results for its third quarter 2023. Defendant DeMartino stated that "[d]espite recessionary freight market conditions, we generated revenue of over $1 billion for the quarter and an operating income margin of 4.2%." Defendant Phillip Yeager further stated that "we believe Hub Group is extremely well positioned to drive long-term growth and returns through our focus on providing best-in-class service, continuing to operate efficiently and investing in our business through accretive acquisitions and long-term organic growth."

40.     On November 3, 2023, the Company filed with the SEC its Form 10-Q for the third quarter of 2023. The Form 10-Q included the following statement about the Company's internal controls:

As of September 30, 2023, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and

procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2023.

41. Defendants Phillip Yeager and DeMartino's SOX certifications for the quarter again stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They further stated that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

42. On February 1, 2024, Hub Group issued its fourth quarter 2023 results through a Form 8-K filed with the SEC and signed by Defendant Beth. In that release, Defendant Phillip Yeager was quoted as stating that "[w]e continue to implement key strategic priorities that position us to grow for the long term, while keeping a significant focus on managing our cost structure." The release reported operating revenue of $985 million and operating income of $29.4 million for the three months ended December 31, 2023.

43. Later that same day, the Company held a conference call with investors and analysts to discuss the recently released financial results. On that call, Defendant Beth stated that "[d]espite a continuing challenging freight market, Hub generated revenue of $4.2 [b]illion for the year and $1 billion for the quarter" and that "[o]ur GAAP operating income margin for the full year was 5.1% and 3% for the quarter."

44. On February 27, 2024, the Company filed with the SEC its Form 10-K for full year 2023. The 2023 Form 10-K contained a section titled "Revenue Recognition," which described the

Company's revenue-recognition practices, including the process for identifying contracts, determining performance obligations, and allocating transaction prices to those obligations. The 2023 Form 10-K stated that the Company's accounting policy for revenue was in accordance with Accounting Standards Codification (ASC) topic 606, "Revenue from Contracts with Customers":

> Revenue is recognized when we transfer services to our customers in an amount that reflects the consideration we expect to receive. We account for a contract when it has approval and commitment from both parties, the rights of the parties are identified, payment terms are identified, the contract has commercial substance and collectability of consideration is probable. We generally recognize revenue over time because of continuous transfer of control to the customer. Since control is transferred over time, revenue and related transportation costs are recognized based on relative transit time, which is based on the extent of progress towards completion of the related performance obligation . . . .

45. Defendants Phillip Yeager and Beth's SOX certifications accompanying the 2023 Form 10-K each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They also certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-K.

46. On April 25, 2024, Hub Group announced its first quarter 2024 results through a Form 8-K filed with the SEC and signed by Defendant Beth. In that filing, Defendant Phillip Yeager was quoted as stating that "[o]ur yield management, cost containment and operating efficiency initiatives resulted in operating income margin of 3.7% of revenue, an improvement over the fourth quarter."

11

47.     Later that day, the Company held a conference call with investors and analysts to discuss the financial results for its first quarter of 2024. During the call, Defendant Beth stated that "[o]ur reported revenue for the first quarter of $1 billion. Revenue declined 13% compared to $1.2 billion last year but was in line with fourth quarter revenue." Defendant Phillip Yeager stated that "our strong balance sheet and robust pipeline of opportunities positions us to drive growth via strategic acquisitions."

48.     On May 3, 2024, the Company filed with the SEC its Form 10-Q for the first quarter of 2024. The Form 10-Q included the following statement about the Company's internal controls:

> As of March 31, 2024, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2024.

49.     Defendants Phillip Yeager and Beth's SOX certifications accompanying the Form 10-Q each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They further certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

50.     On August 1, 2024, the Company held a conference call with investors and analysts to discuss the financial results for its second quarter of 2024. On that call, Defendant Beth "reported revenue for the second quarter of $986 million [which] declined 5% compared to last year . . . ."

51.     On August 2, 2024, the Company filed with the SEC its Form 10-Q for the second quarter of 2024. The Form 10-Q included the following statement about the Company's internal controls:

> As of June 30, 2024, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2024.

52.     Defendants Phillip Yeager and Beth's SOX certifications accompanying the filing each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They also certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

53.     On October 30, 2024, the Company held a conference call with investors and analysts to discuss the financial results for its third quarter of 2024. During the call, Defendant Beth stated that "[f]or the third quarter, Hub reported revenue of $987 million. Revenue declined 3.7% compared to last year and was comparable to second quarter revenue of $986 million." Defendant Phillip Yeager also stated that "[w]e are in a great position as an organization to drive significant growth in revenue and earnings ahead as we execute on our strategy and are supported by a market recovery."

54. On November 1, 2024, the Company filed with the SEC its Form 10-Q for the third quarter of 2024. The Form 10-Q included the following statement about the Company's internal controls:

> As of September 30, 2024, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2024.

55. The SOX certifications signed by Defendants Phillip Yeager and Beth each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They further certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

56. On February 6, 2025, Hub Group announced its fourth quarter and full year 2024 results through a Form 8-K filed with the SEC and signed by Defendant Beth. In the release, Defendant Phillip Yeager was quoted as saying "[w]e continue to implement our key strategic priorities that position us for growth in the long term. We are excited to continue the momentum and deliver for our customers and shareholders in 2025." The release also reported operating revenue of $973 million and operating income of $31.5 million for the three months ended December 31, 2024.

57.     Later that day, the Company held a conference call with investors and analysts to discuss the recently released financial results. During the call, Defendant Beth stated that "Hub generated revenue of $4 billion a 6% decrease over prior year. For the fourth quarter, Hub reported revenue of $1 billion, a decline of 1% over last year's quarterly revenue." Defendant Phillip Yeager also stated that "[the] trends and the actions we have taken to improve our cost structure, maintain excellent service levels and improve growth across all of our offerings, we believe, will lead to improved revenue and earnings in 2025."

58.     On February 25, 2025, the Company filed with the SEC its Form 10-K for full year 2024. The 2024 Form 10-K reported operating revenue of $3.95 billion and operating income of $140.3 million for the year ended December 31, 2024.

59.     The 2024 Form 10-K also included a section titled "Revenue Recognition," which explained the Company's revenue-recognition policies and the steps it undertook in recording revenue, including identifying the relevant contract, identifying performance obligations, and allocating transaction price to those obligations. The 2024 Form 10-K stated that the Company's accounting policy for revenue was in accordance with Accounting Standards Codification (ASC) topic 606, "Revenue from Contracts with Customers":

> Revenue is recognized when we transfer services to our customers in an amount that reflects the consideration we expect to receive. We account for a contract when it has approval and commitment from both parties, the rights of the parties are identified, payment terms are identified, the contract has commercial substance and collectability of consideration is probable. We generally recognize revenue over time because of continuous transfer of control to the customer. Since control is transferred over time, revenue and related transportation costs are recognized based on relative transit time, which is based on the extent of progress towards completion of the related performance obligation . . . .

60.     Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information

included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They also certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-K.

61.     On May 8, 2025, after market close, the Company held a conference call with investors and analysts to discuss the financial results for its first quarter of 2025. Defendant Beth stated that "for the quarter, purchased transportation and warehousing costs were $658 million, a decrease of $82 million from the prior year due to strong cost controls as well as lower rail and warehouse expenses. This results in a 220-basis point improvement on a percent of revenue basis when compared to Q1 of 2024." Defendant Phillip Yeager stated that "[w]e are focused on growth across all of our offerings and improving our cost basis through productivity enhancements, and we have a strong pipeline as we leverage our scale and service to compete and win in the market."

62.     On May 9, 2025, the Company filed with the SEC its Form 10-Q for the first quarter of 2025. The Form 10-Q reported operating expenses of $877.9 million, including purchased transportation and warehousing expenses of $657.9 million, for the three months ended March 31, 2025. The Form 10-Q further reported:

> Purchased transportation and warehousing costs decreased 11% to $658 million in 2025 from $740 million in 2024. As a percentage of revenue, purchased transportation and warehousing costs decreased to 71.9% in 2025 from 74.1% in 2024 . . . due to lower rail and third-party warehouse costs. The reduction in warehouse costs is primarily driven by the completion of our network optimization project in 2024.

63.     The Form 10-Q included the following statement about the Company's internal controls:

As of March 31, 2025, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2025.

64. Defendants Phillip Yeager and Beth's SOX certifications accompanying the filing each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They also certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

65. On July 31, 2025, the Company held a conference call with investors and analysts to discuss the financial results for its second quarter of 2025. During that call, Defendant Beth stated that "for the quarter, purchased transportation and warehousing costs were $656 million, a decrease of $71 million from the prior year due to strong cost controls as well as lower rail and warehouse expenses. This resulted in a 130 basis point improvement on a percent of revenue basis when compared to Q2 of 2024." Defendant Phillip Yeager stated that "we believe that Hub Group is positioned for growth in both the current environment as well as with a combined transcontinental partner due to our scale, flexible model, service, customer relationships and rail partnerships."

66. On August 6, 2025, the Company filed with the SEC its Form 10-Q for the second quarter of 2025. The Form 10-Q reported operating expenses of $871.3 million, including

purchased transportation and warehousing expenses of $655.9 million, for the three months ended June 30, 2025. The Company also reported:

> Purchased transportation and warehousing costs decreased 10% to $656 million in 2025 from $727 million in 2024. As a percentage of revenue, purchased transportation and warehousing costs decreased to 72.4% in 2025 from 73.7% in 2024 . . . due to rail cost decreases, lower third-party drayage and warehousing costs, and lower fuel costs.

67.     The Form 10-Q included the following statement about the Company's internal controls:

> As of June 30, 2025, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2025.

68.     Defendants Phillip Yeager and Beth's SOX certifications accompanying the Form 10-Q each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They further certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

69.     On October 30, 2025, the Company held a conference call with investors and analysts to discuss the financial results for its third quarter of 2025. During that call, Defendant Beth stated that "[f]or the quarter, purchase transportation and warehousing costs were $684 million, a decrease of $56 million from prior year due to strong cost controls as well as lower rail and warehouse expenses. This resulted in a 180-basis point improvement on a percent of revenue

basis when compared to Q3 of 2024." Defendant Phillip Yeager stated that "[w]e are actively reallocating assets in preparation for growth with new and existing customers and believe that our high-end service capabilities, geographic density and dynamic model position us well for growth in the current market and the shifts in capacity occur."

70. On November 5, 2025, the Company filed with the SEC its Form 10-Q for the third quarter of 2025. The Form 10-Q reported operating expenses of $895.1 million, including purchased transportation and warehousing expenses of $683.7 million, for the three months ended September 30, 2025. The Form 10-Q also reported:

> Purchased transportation and warehousing costs decreased 8% to $684 million in 2025 from $740 million in 2024 . . . due to rail cost decreases and lower third-party carrier costs as we have purchased third party transportation more effectively. Additionally, our warehouse costs have decreased after the completion of our warehouse space consolidation efforts as part of our Network Alignment Initiative in 2024.

71. The Form 10-Q included the following statement about the Company's internal controls:

> As of September 30, 2025, an evaluation was carried out under the supervision and with the participation of our management, including the Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2025.

72. Defendants Phillip Yeager and Beth's SOX certifications accompanying the third quarter 2025 Form 10-Q each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." They also certified that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material

information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

73. The foregoing statements were materially false and misleading, and failed to disclose materially adverse facts about the Company's business and operations. Specifically, the statements were materially false and misleading because Hub Group's financial statements for the periods from the first quarter of 2023 through the fourth quarter of 2024, including its 2023 and 2024 annual reports, were materially misstated. Those misstatements allegedly resulted from the premature and improper recognition of certain transactions and concerned, among other things, the Company's operating revenue, operating income, revenue-recognition practices, the effectiveness of its internal controls and procedures, and the stated drivers of its financial performance and growth.

74. The statements identified above were also materially false and misleading because Hub Group's financial statements for the periods from the first quarter of 2025 through the third quarter of 2025 contained material misstatements resulting from the understatement of purchased transportation costs and accounts payable. Those misstatements concerned, among other things, the Company's operating expenses, purchased transportation and warehousing expenses, operating income, the effectiveness of its internal disclosure controls and procedures, and the stated drivers of Hub Group's financial results and growth.

**C.     The Truth is Revealed**

75. On February 5, 2026, the Company issued a press release to announce financial results for the fourth quarter and full year 2025. The press release revealed that the Company would be restating its financial statements for the first, second, and third quarters of 2025 "due to an error that resulted in the understatement of purchased transportation costs and accounts payable."

20

However, the press release stated, there was "no expected impact on total cash and cash equivalents or operating cash flow for any periods." According to the press release:

> In connection with the preparation of its financial statements for the year ended December 31, 2025, the Company identified an error that resulted in the understatement of purchased transportation costs and accounts payable in the first nine months of 2025. The total amount of the reduction to accounts payable and purchased transportation costs related to this issue that was recorded during these periods is $77 million. Based on its analysis to date, the Company estimates the correction of the error will increase purchased transportation and warehousing costs for the nine months ended September 30, 2025, but cannot yet estimate what the resulting increase to purchased transportation and warehousing costs and accounts payable will be. There is no expected impact on Hub Group's total cash and cash equivalents or operating cash flows for any periods.

> "Accuracy and transparency in reporting on our performance is of the utmost importance at Hub Group," said [Defendant P.] Yeager. "We look forward to reporting our full financial results as soon as possible and are enhancing our processes. Our team continues to focus on serving our customers with innovative solutions and services."

> The Company plans to restate its financial statements for the first, second and third quarters of 2025. The Company is continuing to assess the potential impact to its consolidated financial statements for the years ended December 31, 2024 and 2023. The Company expects to file its Annual Report on Form 10-K for the year ended December 31, 2025 as soon as practicable.

76.     A Form 8-K filed with the SEC on February 5, 2026 stated that the financial statements included in the Forms 10-Q filed in 2025 were "materially misstated due to the aforementioned error and should no longer be relied upon." The Form 8-K continued that all "reports, earnings releases, investor presentations or similar communications" describing the financial statements should not be relied upon, either.

77.     Following this disclosure, Hub Group's stock price fell approximately 18%, declining from $51.33 per share at the close of trading on February 5, 2026, to $41.96 per share at the close of trading on February 6, 2026.

21

78. On March 3, 2026, the Company filed a Form 12b-25 Notification of Late Filing that revealed that the Company would not be able to timely file its Form 10-K for the full year 2025. According to the Notification:

> As reported in a Current Report on Form 8-K filed with the Securities and Exchange Commission (the "SEC") on February 5, 2026, the Audit Committee of the Board of Directors of Hub Group, Inc. (the "Company") concluded that the unaudited consolidated financial statements of the Company included in the Quarterly Reports on Form 10-Q for each of the quarterly periods ended March 31, 2025 (the "Q1 2025 Financial Statements"), June 30, 2025 (the "Q2 2025 Financial Statements") and September 30, 2025 (the "Q3 2025 Financial Statements") filed with the SEC on May 9, 2025, August 6, 2025 and November 5, 2025, respectively, were in each case materially misstated and should no longer be relied upon.

> The Company could not file, without unreasonable effort or expense, its Annual Report on Form 10-K for the year ended December 31, 2025 (the "2025 Form 10-K") by the prescribed due date of March 2, 2026, because it requires additional time to restate the Q1 2025 Financial Statements, the Q2 2025 Financial Statements and the Q3 2025 Financial Statements, which restatement must be completed prior to the filing of the 2025 Form 10-K.

> The Company is also continuing to assess the potential impact to its consolidated financial statements for the years ended December 31, 2024 and 2023, as well as the effectiveness of its disclosure controls and procedures and internal control over financial reporting and appropriate remediation steps. The Company expects to conclude that it did not maintain effective disclosure controls and procedures and internal control over financial reporting for the year ended December 31, 2025.

79. On March 24, 2026, Hub Group issued a press release announcing that the Company had been notified by the Listing Qualifications Department of The Nasdaq Stock Market that the Company was not in compliance with Nasdaq Listing Rule 5250(c)(1) because of the delay in filing its Form 10-K for the full year 2025.

80. Then, on May 12, 2026, the Company filed a Form 8-K with the SEC, announcing that the financial statements for the full years 2023 and 2024 should not be relied upon. Specifically, the Form 8-K stated:

> On May 11, 2026, the Audit Committee of the Board of Directors of Hub Group, Inc. (the "Company"), following discussion with and upon the recommendation of

management, concluded that the previously issued audited consolidated financial statements of the Company as of and for each of the years ended December 31, 2024 (the "2024 Financial Statements") and 2023 (the "2023 Financial Statements") included in the Company's Annual Reports on Form 10-K filed on February 25, 2025 and February 27, 2024, respectively, were in each case materially misstated and should no longer be relied upon. Any previously furnished or filed reports, earnings releases, investor presentations or similar communications of the Company describing the 2024 Financial Statements or the 2023 Financial Statements (or any portion thereof) should no longer be relied upon.

The determination follows a review, conducted under the direction of the Audit Committee, that identified certain transactions that were prematurely or incorrectly recognized or not adequately supported. The Company is continuing to review additional accounting issues that may potentially further impact the 2024 Financial Statements and/or the 2023 Financial Statements, but does not believe any such additional issues will alter the non-reliance conclusion. The Company is also continuing to assess the effectiveness of its disclosure controls and procedures and internal control over financial reporting and appropriate remediation steps. The Company expects to conclude that it did not maintain effective disclosure controls and procedures and internal control over financial reporting for each of the years ended December 31, 2024 and 2023.

81.     That day, the Company also filed a Form 12b-25 Notification of Late Filing that revealed that the Company would not be able to timely file its Form 10-Q for the first quarter of 2025. According to the Notification:

Hub Group, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2026 (the "Q1 2026 Form 10-Q") within the prescribed time period, without unreasonable effort and expense, as a result of the delay in the filing of its Annual Report on Form 10-K for the fiscal year ended December 31, 2025 (the "2025 Form 10-K"). The delay in filing the 2025 Form 10-K has resulted in a corresponding delay in the preparation and completion of the Q1 2026 Form 10-Q.

The Company is working diligently to complete the restatement of its consolidated financial statements for the years ended December 31, 2024 and 2023 and the quarterly periods ended March 31, 2025, June 30, 2025 and September 30, 2025 and the financial close process and related audit of its consolidated financial statements for the year ended December 31, 2025, each of which must be completed prior to the filing of the 2025 Form 10-K. The Company expects to file the Q1 2026 Form 10-Q as soon as practicable after the filing of the 2025 Form 10-K.

82. On May 21, 2026, Hub Group issued a press release announcing that the Company had been notified by the Nasdaq Stock Market that the Company was not in compliance with Nasdaq Listing Rule 5250(c)(1) because of the delay in filing its Form 10-Q for the first quarter of 2026.

**D.      Officer Exits**

83. On May 28, 2026, the Company issued a press release announcing leadership changes. According to the press release, Defendant Beth, as well as Executive Vice President and Chief Operating Officer Brian Meents stepped down as of the previous day. Both Defendant Beth and Mr. Meents would be serving as consultants for Hub Group during a transition period.  The press release continued:

> "The Hub Group Board of Directors views the integrity of the Company's financial statements as a key pillar of our ongoing success," said Peter McNitt, Lead Director, and Gary Yablon, Chair of the Audit Committee. "In connection with the review conducted under the direction of the Audit Committee, we are taking corrective actions, including enhancing our financial reporting processes and making changes to the Company's leadership team. We will continue to prioritize finalizing our financial statements and becoming current with the filing of our periodic reports with the SEC."

**E.      Defendants' Misconduct Has and Continues to Harm the Company**

84. As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

85. Hub Group's reputation and goodwill have also been damaged by the Defendants' misconduct.

**F.      Hub Group Issues False and Misleading Proxy Statements**

86.     In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period, including the Schedule 14A Proxy Statements issued on April 12, 2024 (the "2024 Proxy") and April 3, 2025 (the "2025 Proxy" and, collectively with the 2024 Proxy, the "Proxies"), that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

87.     The Director Defendants drafted, approved, reviewed, and/or signed the Proxies before they were filed with the SEC and disseminated to Hub Group's stockholders. The Director Defendants negligently issued materially misleading statements in the Proxies. These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the Proxies allegations and related claims.

88.     In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the 2024 Proxy. The 2024 Proxy stated:

> The Board of Directors, as a whole and at the committee level, is ultimately responsible for overseeing risk management at the Company. The Board has delegated certain of its risk oversight responsibilities to its committees, as described below. Each committee regularly reports to the Board regarding its risk management activities.
>
> - The Board has delegated to the Compensation Committee responsibility for oversight of risks relating to human capital matters, including our employee compensation plans, policies, and programs.
>
> - The Board has delegated to the Audit Committee various risk management responsibilities related to the financial, internal control, environmental,

cybersecurity and litigation risks of the Company. The Board has also charged the Audit Committee with the responsibility for undertaking periodic comprehensive risk review, which includes a review of the steps taken by the Company to mitigate key risks identified by management. Any issues that arise from this discussion are then reviewed with the entire Board as necessary.

- The Board has delegated to the Nominating and Governance Committee oversight of managing the risks related to succession planning.

Implicit in delegated oversight described above is the oversight of Environmental, Social and Governance (ESG) matters. The Board believes that the Audit Committee oversees risk related to environmental matters, the compensation committee oversees risks related to social matters, including diversity and inclusion, and the Nominating and Governance Committee oversees risks related to governance matters.

The risk oversight function is also supported by our Executive Chairman and our Chief Executive Officer, whose industry leadership, tenure and experience provide a deep understanding of the risks that the Company faces. Collectively, these processes are intended to provide the Board of Directors as a whole with an in-depth understanding of risks faced by the Company. The Board of Directors believes that this division of risk management responsibilities among the Executive Chairman and Chief Executive Officer, each of whom has an integral role in our day-to-day risk management processes, together with the Audit Committee, the Compensation Committee, the Nominating and Governance Committee and an experienced senior management team, effectively addresses the material risks facing Hub Group. Our Board further believes that our leadership structure, described above, supports the risk oversight function of the Board as it allows our independent directors, through the three fully independent Board committees and in executive sessions of independent directors, to exercise effective oversight of management's actions in identifying risks and implementing effective risk management policies and controls.

89. Similarly, in support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the 2025 Proxy. The 2025 Proxy stated:

The Board of Directors, as a whole and at the committee level, is ultimately responsible for overseeing risk management at the Company. The Board has delegated certain of its risk oversight responsibilities to its committees, as described below. Each committee regularly reports to the Board regarding its risk management activities.

26

- The Board has delegated to the Compensation Committee responsibility for oversight of risks relating to human and social capital matters, including our employee compensation plans, policies, and programs.

- The Board has delegated to the Audit Committee various risk management responsibilities related to the financial, internal control, environmental, cybersecurity (including artificial intelligence) and litigation risks of the Company. The Board has also charged the Audit Committee with the responsibility for undertaking periodic comprehensive risk review, which includes a review of the steps taken by the Company to mitigate key risks identified by management. Any issues that arise from this discussion are then reviewed with the entire Board as necessary.

- The Board has delegated to the Nominating and Governance Committee oversight of managing the risks related to succession planning and governance matters.

The risk oversight function is also supported by our Executive Chairman and our Chief Executive Officer, whose industry leadership, tenure and experience provide a deep understanding of the risks that the Company faces. Collectively, these processes are intended to provide the Board of Directors as a whole with an in-depth understanding of risks faced by the Company. The Board of Directors believes that this division of risk management responsibilities among the Executive Chairman and Chief Executive Officer, each of whom has an integral role in our risk management processes, together with the Audit Committee, the Compensation Committee, the Nominating and Governance Committee and an experienced senior management team, effectively addresses the material risks facing Hub Group. Our Board further believes that our leadership structure, described above, supports the risk oversight function of the Board as it allows our independent directors, through the three fully independent Board committees and in executive sessions of independent directors, to exercise effective oversight of management's actions in identifying risks and implementing effective risk management policies and controls.

90.     The Proxies thus assured stockholders that the Director Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning the adequacy of the Company's internal

controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

91. As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

### G. The Board Breached its Fiduciary Duties

92. As officers and/or directors of Hub Group, the Defendants owed Hub Group fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Hub Group in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Hub Group, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

93. Defendants, because of their positions of control and authority as directors and/or officers of Hub Group, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Hub Group's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

94. To discharge their duties, the officers and directors of Hub Group were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Hub Group were required to, among other things:

(a) Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b) Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d) Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e) Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f) Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g)     Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

95.     The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

96.     The Board's Audit Committee is tasked with overseeing Hub Group's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Hub Group's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

**Review the Financial Statements**

The Committee will review the audited financial statements with management and the independent auditors. It is anticipated that these discussions will include quality of earnings, discussions of significant items subject to estimate, consideration of the suitability of accounting principles (including all alternative treatments of financial information within generally accepted accounting principles that have been discussed with management, ramifications of the use of such alternative disclosure and treatments and the treatment preferred by the independent auditors), review of highly judgmental areas, audit adjustments whether or not recorded and such other inquiries as may be appropriate and as may be required under the applicable Statement on Auditing Standards. Upon completion of their review, the Committee shall make a recommendation to the Board as to whether the financial statements should be included in the Company's Annual Report on Form 10-K to be filed with the SEC.

The Committee will also review with management and the independent auditors the quarterly financial information prior to the Company's filing of Quarterly Reports on Form 10-Q with the SEC.

When reviewing the financial statements, the Committee will review and discuss with management as applicable, (a) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies; (b) analyses prepared by management or the public accountants setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (c) any management letter provided by the public accountants and the Company's response to that letter; (d) any problems, difficulties or differences encountered in the course of the audit work, including any disagreements with management or restrictions on the scope of the public accountants' activities or on access to requested information and management's response thereto; (e) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company; and (f) earnings press releases (paying particular attention to any use of "pro forma," or "adjusted" non-GAAP, information), as well as financial information and earnings guidance (generally or on a case-by-case basis) provided to analysts and rating agencies.

**Monitor Internal Controls and Disclosure Controls**

The Committee will discuss with management and the auditors the quality and adequacy of the Company's internal controls over financial reporting and disclosure controls including periodic updates of recommendations made by the independent auditors and others to strengthen controls and management's corrective actions.

97.    In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Yablon, Boosalis, Dykstra, Flannery, Kenny, McNitt, Ross, and Slark conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

98.    In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to

31

effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

99.     The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Hub Group.

## DERIVATIVE ALLEGATIONS

100.    Plaintiff brings this action derivatively in the right and for the benefit of Hub Group to redress injuries suffered by Hub Group as a direct result of the Director Defendants' breaches of fiduciary duty. Hub Group is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

101.    Plaintiff will adequately and fairly represent the interests of Hub Group in enforcing and prosecuting the Company's rights.

102.    Plaintiff was a stockholder of Hub Group at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Hub Group stockholder.

## DEMAND FUTILITY ALLEGATIONS

103. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation set forth as though fully set forth herein.

104. The Hub Group Board currently consists of the ten Director Defendants.

105. Plaintiff has not made any demand on Hub Group's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

106. The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.

107. The Director Defendants' making or authorization of the false and misleading statements discussed above caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Hub Group. The failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence, constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. The Director Defendants

could not fairly and fully prosecute this action or any other action concerning the misconduct described above.

### A. Demand is Excused as to Defendant P. Yeager

108. Defendant P. Yeager is the Company's President, CEO, and Vice Chairman of the Board. According to the 2025 Proxy, Defendant P. Yeager received compensation of $3,964,450 in 2024 and $2,609,274 in 2023. Defendant P. Yeager depends on Hub Group for his income. In addition, the Company stated in the 2025 Proxy that Defendant P. Yeager is not independent pursuant to Nasdaq listing standards and SEC rules.

109. Defendant P. Yeager served as a director of the Company during the Relevant Time Period. As a director, Defendant P. Yeager had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant P. Yeager was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

110. Defendant P. Yeager failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant P. Yeager failed to protect corporate assets.

111. Defendant P. Yeager was an active participant in the misconduct described above. Defendant P. Yeager signed the Forms 10-K and Forms 10-Q filed by the Company during the Relevant Time Period. Defendant P. Yeager thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the

34

Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

112. Defendant P. Yeager is a named defendant in the Securities Class Action.

113. Furthermore, Defendant P. Yeager is the son of Defendant D. Yeager.

114. Thus, Defendant P. Yeager faces a substantial likelihood of liability.

**B.     Demand is Excused as to Defendant D. Yeager**

115. Defendant D. Yeager is the Company's Executive Chairman. According to the 2025 Proxy, Defendant D. Yeager received compensation of $3,009,649 in 2024 and $2,665,638 in 2023. Defendant D. Yeager depends on Hub Group for his income. In addition, the Company stated in the 2025 Proxy that Defendant D. Yeager is not independent pursuant to Nasdaq listing standards and SEC rules.

116. Defendant D. Yeager served as a director of the Company during the Relevant Time Period. As a director, Defendant D. Yeager had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant D. Yeager was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

117. Defendant D. Yeager failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant D. Yeager failed to protect corporate assets.

118. Defendant D. Yeager was an active participant in the misconduct described above. Defendant D. Yeager signed the Forms 10-K filed by the Company during the Relevant Time

Period. Defendant D. Yeager thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

119.    Defendant D. Yeager is a named defendant in the Securities Class Action.

120.    Furthermore, Defendant D. Yeager is the father of Defendant P. Yeager.

121.    Thus, Defendant D. Yeager faces a substantial likelihood of liability.

**C.    Demand is Excused as to Defendant Yablon**

122.    Defendant Yablon served as a director of the Company during the Relevant Time Period. As a director, Defendant Yablon had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Yablon was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

123.    Defendant Yablon failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant Yablon failed to protect corporate assets.

124.    According to the 2025 Proxy, Defendant Yablon received $300,089 in compensation in connection with his role as a Company director. Defendant Yablon is not otherwise employed. Accordingly, Defendant Yablon cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

125.    Defendant Yablon was an active participant in the misconduct described above. Defendant Yablon signed the Forms 10-K filed by the Company during the Relevant Time Period.

Defendant Yablon thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

126. Defendant Yablon served as Chair of the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q, and monitoring the adequacy of the Company's internal controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant Yablon responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

127. In addition, as a member of the Audit Committee, Defendant Yablon knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Yablon knowingly or recklessly allowed the misconduct described above to occur.

128. Defendant Yablon knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Yablon breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Yablon faces a substantial likelihood of liability for these breaches, making any demand on Defendant Yablon futile.

### D. Demand is Excused as to Defendant McNitt

129. Defendant McNitt served as a director of the Company during the Relevant Time Period. As a director, Defendant McNitt had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant McNitt was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

130. Defendant McNitt failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant McNitt failed to protect corporate assets.

131. According to the 2025 Proxy, Defendant McNitt received $300,089 in compensation in connection with his role as a Company director. Defendant McNitt is not otherwise employed. Accordingly, Defendant McNitt cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

132. Defendant McNitt was an active participant in the misconduct described above. Defendant McNitt signed the Forms 10-K filed by the Company during the Relevant Time Period. Defendant McNitt thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

133. Defendant McNitt served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q, and monitoring the adequacy of the Company's internal

38

controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant McNitt responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

134.     In addition, as a member of the Audit Committee, Defendant McNitt knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant McNitt knowingly or recklessly allowed the misconduct described above to occur.

135.     Defendant McNitt knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant McNitt breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant McNitt faces a substantial likelihood of liability for these breaches, making any demand on Defendant McNitt futile.

E.     **Demand is Excused as to Defendant Flannery**

136.     Defendant Flannery served as a director of the Company during the Relevant Time Period. As a director, Defendant Flannery had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Flannery was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

137. Defendant Flannery failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant Flannery failed to protect corporate assets.

138. According to the 2025 Proxy, Defendant Flannery received $300,089 in compensation in connection with his role as a Company director. Accordingly, Defendant Flannery cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

139. Defendant Flannery was an active participant in the misconduct described above. Defendant Flannery signed the Forms 10-K filed by the Company during the Relevant Time Period. Defendant Flannery thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

140. Defendant Flannery served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q, and monitoring the adequacy of the Company's internal controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant Flannery responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

141. In addition, as a member of the Audit Committee, Defendant Flannery knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Flannery knowingly or recklessly allowed the misconduct described above to occur.

142. Defendant Flannery knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Flannery breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Flannery faces a substantial likelihood of liability for these breaches, making any demand on Defendant Flannery futile.

**F.  Demand is Excused as to Defendant Boosalis**

143. Defendant Boosalis served as a director of the Company during the Relevant Time Period. As a director, Defendant Boosalis had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Boosalis was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

144. Defendant Boosalis failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant Boosalis failed to protect corporate assets.

145. According to the 2025 Proxy, Defendant Boosalis received $300,089 in compensation in connection with her role as a Company director. Defendant Boosalis is not otherwise employed. Accordingly, Defendant Boosalis cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

146. Defendant Boosalis was an active participant in the misconduct described above. Defendant Boosalis signed the Forms 10-K filed by the Company during the Relevant Time Period. Defendant Boosalis thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

147. Defendant Boosalis served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q and monitoring the adequacy of the Company's internal controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant Boosalis responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

148. In addition, as a member of the Audit Committee, Defendant Boosalis knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent

registered public accounting firm providing auditing services, Defendant Boosalis knowingly or recklessly allowed the misconduct described above to occur.

149. Defendant Boosalis knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Boosalis breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Boosalis faces a substantial likelihood of liability for these breaches, making any demand on Defendant Boosalis futile.

### G. Demand is Excused as to Defendant Dykstra

150. Defendant Dykstra served as a director of the Company during the Relevant Time Period. As a director, Defendant Dykstra had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Dykstra was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

151. Defendant Dykstra failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant Dykstra failed to protect corporate assets.

152. According to the 2025 Proxy, Defendant Dykstra received $300,089 in compensation in connection with her role as a Company director. Accordingly, Defendant Dykstra cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

153. Defendant Dykstra was an active participant in the misconduct described above. Defendant Dykstra signed the Forms 10-K filed by the Company during the Relevant Time Period.

Defendant Dykstra thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

154. Defendant Dykstra served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q and monitoring the adequacy of the Company's internal controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant Dykstra responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

155. In addition, as a member of the Audit Committee, Defendant Dykstra knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Dykstra knowingly or recklessly allowed the misconduct described above to occur.

156. Defendant Dykstra knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Dykstra breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Dykstra faces a substantial likelihood of liability for these breaches, making any demand on Defendant Dykstra futile.

### H. Demand is Excused as to Defendant Kenny

157. Defendant Kenny served as a director of the Company during the Relevant Time Period. As a director, Defendant Kenny had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Kenny was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

158. Defendant Kenny failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant Kenny failed to protect corporate assets.

159. According to the 2025 Proxy, Defendant Kenny received $300,089 in compensation in connection with his role as a Company director. Defendant Kenny is not otherwise employed. Accordingly, Defendant Kenny cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

160. Defendant Kenny was an active participant in the misconduct described above. Defendant Kenny signed the Forms 10-K filed by the Company during the Relevant Time Period. Defendant Kenny thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

161. Defendant Kenny served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q, and monitoring the adequacy of the Company's internal

45

controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant Kenny responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

162. In addition, as a member of the Audit Committee, Defendant Kenny knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Kenny knowingly or recklessly allowed the misconduct described above to occur.

163. Defendant Kenny knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Kenny breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Kenny faces a substantial likelihood of liability for these breaches, making any demand on Defendant Kenny futile.

## I. Demand is Excused as to Defendant Ross

164. Defendant Ross served as a director of the Company during the Relevant Time Period. As a director, Defendant Ross had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Ross was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

165. Defendant Ross failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant Ross failed to protect corporate assets.

166. According to the 2025 Proxy, Defendant Ross received $300,089 in compensation in connection with her role as a Company director. Accordingly, Defendant Ross cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

167. Defendant Ross was an active participant in the misconduct described above. Defendant Ross signed the Forms 10-K filed by the Company during the Relevant Time Period. Defendant Ross thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

168. Defendant Ross served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q, and monitoring the adequacy of the Company's internal controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant Ross responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

169. In addition, as a member of the Audit Committee, Defendant Ross knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Ross knowingly or recklessly allowed the misconduct described above to occur.

170. Defendant Ross knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Ross breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Ross faces a substantial likelihood of liability for these breaches, making any demand on Defendant Ross futile.

**J.      Demand is Excused as to Defendant Slark**

171. Defendant Slark served as a director of the Company during the Relevant Time Period. As a director, Defendant Slark had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Slark was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

172. Defendant Slark failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Hub Group's controls, Defendant Slark failed to protect corporate assets.

173. According to the 2025 Proxy, Defendant Slark received $300,089 in compensation in connection with his role as a Company director. Defendant Slark is not otherwise employed.

48

Accordingly, Defendant Slark cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

174. Defendant Slark was an active participant in the misconduct described above. Defendant Slark signed the Forms 10-K filed by the Company during the Relevant Time Period. Defendant Slark thus made false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024.

175. Defendant Slark served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the financial statements to be filed in the Company's Forms 10-K and 10-Q, and monitoring the adequacy of the Company's internal controls over financial reporting. The Audit Committee was responsible for reviewing and approving Hub Group's Forms 10-K and 10-Q that were filed during the Relevant Time Period, making Defendant Slark responsible for knowingly or recklessly allowing the materially false and misleading statements concerning the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

176. In addition, as a member of the Audit Committee, Defendant Slark knowingly or recklessly allowed the Company to incorrectly recognize certain transactions, and to understate certain costs and accounts payable during the Relevant Time Period. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Slark knowingly or recklessly allowed the misconduct described above to occur.

177. Defendant Slark knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Slark breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Slark faces a substantial likelihood of liability for these breaches, making any demand on Defendant Slark futile.

178. Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Fiduciary Duty
### (Derivatively Against The Director Defendants)

179. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

180. Each of the Director Defendants owed and owes Hub Group the highest obligations of loyalty, good faith, due care, and oversight.

181. Each of the Director Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

182. The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

183. In addition, the Director Defendants further breached their fiduciary duties owed to Hub Group by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with

inadequate internal controls which resulted in the misrepresentations and failure to disclose the truth about the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

184. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

185. The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

186. As a direct and proximate result of the breaches of duty alleged herein, Hub Group has sustained and will sustain significant damages.

187. As a result of the misconduct alleged herein, these Defendants are liable to the Company.

188. Plaintiff, on behalf of the Company, has no adequate remedy at law.

## COUNT II

### Breach of Fiduciary Duty
### (Derivatively Against the Officer Defendants)

189.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

190.     The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owe Hub Group the highest obligations of loyalty, good faith, due care, oversight, and candor.

191.     The Officer Defendants breached their fiduciary duties owed to Hub Group by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose truth about the adequacy of the Company's internal controls over financial reporting and the reliability of the Company's financial statements for full years 2023 and 2024, as well as the first, second, and third quarters of 2025.

192.     The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

193.     As a direct and proximate result of the breaches of duty alleged herein, Hub Group has sustained and will sustain significant damages.

194.     As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

195.     Plaintiff, on behalf of Hub Group, has no adequate remedy at law.

## COUNT III

### Gross Mismanagement
### (Against All Defendants)

196.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

197.     By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation

198.     As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages.

199.     As a direct and proximate result of the gross mismanagement and breaches of duty alleged herein, Hub Group has sustained and will sustain significant damages.

200.     As a result of the misconduct alleged herein, the Defendants are liable to the Company.

201.     Plaintiff, on behalf of Hub Group, has no adequate remedy at law.

## COUNT IV

### Waste of Corporate Assets
### (Derivatively Against All Defendants)

202.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

203.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Time Period. It resulted in continuous, connected, and ongoing harm to the Company.

204.     As a result of the misconduct described above, the Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii)

incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

205. As a direct and proximate result of the waste of corporate assets and breaches of duty alleged herein, Hub Group has sustained significant damages.

206. As a result of the misconduct alleged herein, the Defendants are liable to the Company.

207. Plaintiff, on behalf of Hub Group, has no adequate remedy at law.

## COUNT V

### Unjust Enrichment
### (Derivatively Against the Officer Defendants)

208. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

209. By their wrongful acts, violations of law, and false or misleading statements or omissions of material fact that they caused to be made, the Defendants were unjustly enriched at the expense of, and the detriment of, the Company.

210. The Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price, or received compensation or other payments that were unjust in light of the Defendants' bad faith conduct.

211. Plaintiff, on behalf of Hub Group, seeks restitution from the Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation based compensation, obtained by the Defendants due to their wrongful conduct and breach of their fiduciary duties.

## COUNT VI

### Violation of Section 14(a) of the Exchange Act
### (Against The Director Defendants)

212.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

213.    The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

214.    The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the False Proxies. In the False Proxies, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

215.    The False Proxies, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Hub Group misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

216. Plaintiff, on behalf of Hub Group, thereby seeks relief for damages inflicted upon the Company based upon the misleading Proxies in connection with the improper reelection of the Director Defendants to the Board.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of Hub Group and that Plaintiff is a proper and adequate representative of the Company;

B. Against all of the Defendants and in favor of Hub Group for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C. Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D. Awarding Hub Group restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 28, 2026                                   Respectfully submitted,

                                                       /s/ Timothy P. Kingsbury
                                                       *One of Plaintiff's Attorneys*

56

**KINGSBURY LAW LLC**
Timothy P. Kingsbury
8 S. Michigan Ave., Ste. 2600
Chicago, IL 60603
Telephone: (312) 291-1960
Email: tim@kingsburylawllc.com

**BRIAN MURRAY LAW PLLC**
Brian P. Murray
750 E. Main St., Suite 620
Stamford, CT 06902
Telephone: (203) 246-2368
Email: bmurray@brianmurraylaw.com

**ROWLEY LAW PLLC**
Shane T. Rowley, Esq.
Danielle Rowland Lindahl, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
         drl@rowleylawpllc.com

*Counsel for Plaintiff*

## VERIFICATION

I, John Anderson, am the named plaintiff in the foregoing derivative action. I have read the foregoing Verified Stockholder Derivative Complaint, know the contents thereof, and authorized its filing. The contents alleged therein are true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. I further declare that I am a current holder, and have been a holder, of Hub Group, Inc., common stock during the time period in which the wrongful conduct alleged and complained of occurred.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23 day of July 2026.

_John Anderson_
John Anderson (Jul 23, 2026 13:09:08 EDT)

John Anderson